J. Benjamin Rottenborn (*Pro hac vice* filed concurrently)
Michael P. Gardner (*Pro hac vice* filed concurrently)
Justin E. Simmons (*Pro hac vice* concurrently)
WOODS ROGERS PLC
P.O. Box 14125
Roanoke, VA 24038-4125
Phone: (540) 983-7600
Fax: (540) 983-7711
brottenborn@woodsrogers.com
mgardner@woodsrogers.com
jsimmons@woodsrogers.com

Michael P. Manning
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St., Suite 1206
Billings, MT 59102
Phone:  (406) 601-1400
Fax:  (406) 545-0412
mmanning@rmkfirm.com

*Counsel for Relator Charles Sanford Stone, II*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA ex rel. CHARLES SANFORD STONE, II,<br><br>Plaintiff;<br><br>v.<br><br>RONAN TELEPHONE COMPANY d/b/a ACCESS MONTANA,<br><br>Defendant. | **FILED IN CAMERA AND UNDER SEAL (31 U.S.C. § 3730(b)(2))**<br><br>Civil Action No. _____<br><br>**COMPLAINT** |

{2547582-2, 120383-00001-01}

Plaintiff The United States of America ("United States" or "Government") ex rel. Charles Sanford Stone, II ("Relator"), by counsel, complains of Defendant Ronan Telephone Company d/b/a Access Montana ("Ronan Telephone") as follows:

## Nature of the Action

1. In this action, Relator, on behalf of the United States, seeks to recover treble damages and civil penalties against Ronan Telephone for making or causing to be made false or fraudulent claims, records, or statements, in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.*

## Parties

2. Relator is a natural person who is domiciled in Montana.

3. Ronan Telephone is a corporation created and existing under the laws of Montana with a principal place of business at 312 Main Street, S.W., Ronan, MT 59864. Ronan Telephone operates an Independent Local Exchange Carrier within the boundaries of the Flathead reservation.

## Jurisdiction and Venue

4. This Court has subject-matter jurisdiction over this action under 31 U.S.C. §§ 3730(b) and 3732(a). Prior to this filing, Relator

served a copy of this Complaint and a written disclosure of substantially all material evidence and information in his possession on the United States Attorney General and United States Attorney for the District of Montana pursuant to 31 U.S.C. §§ 3730(b)(2).

5. This Court has personal jurisdiction over Ronan Telephone because it is a Montana corporation that regularly transacts business in Montana and because the acts giving rise to Relator's claims occurred in Montana.

6. Venue is proper in this District under 31 U.S.C. § 3732(a) because: (a) Relator resides in this District; (b) Ronan Telephone represented to the United States that it regularly transacts business in this District; and (c) many of the acts proscribed by 31 U.S.C. § 3729 giving rise to the claims alleged against Ronan Telephone in this Complaint occurred in this District.

7. The claims alleged against Ronan Telephone in this Complaint are not based on allegations or transactions that are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party, as barred by 31 U.S.C. § 3730(e)(3).

8. If substantially the same allegations or transactions set forth in this Complaint were publicly disclosed beforehand, then Relator is the "original source" of those allegations or transactions within the meaning of 31 U.S.C. § 3730(e)(4)(B). He has information that is independent of and materially adds to the publicly disclosed allegations or transactions, and has voluntarily provided that information to the Government along with filing this Complaint, in accordance with 31 U.S.C. § 3730(b)(2).

## Facts

9. As part of the American Recovery and Reinvestment Act of 2009 ("Recovery Act"), Congress allocated $4.7 billion to the National Telecommunications and Information Administration's ("NTIA") Broadband Technology Opportunities Program ("BTOP"). The purpose of this program was to expand broadband internet access to unserved and underserved areas. To that end, the program provided grant funding to support the development of broadband infrastructure. The program furthered the objectives of the Recovery Act by creating new jobs and encouraging long-term economic growth.

10. NTIA opened BTOP's final round of grant funding in early 2010, accepting applications until the end of March of that year. During

that round, NTIA prioritized Comprehensive Community Infrastructure ("CCI") projects focused on Middle Mile broadband infrastructure that supported growth in economically distressed areas and incorporated a Last Mile infrastructure component in unserved or underserved areas, or, instead, included a commitment from at least one Last Mile broadband service provider.

11. In its notice for the final round of funding, NTIA defined "Middle Mile" as "those components of a CCI project that provide broadband service from one or more centralized facilities . . . to an Internet point of presence," and "Last Mile" as "those components of a CCI project that provide broadband service to end-user devices through an intermediate point of aggregation." *Dep't of Commerce, Notice of Funds Availability*, 75 Fed. Reg. 3792 (Jan. 22, 2010).

12. In March 2010, Ronan Telephone submitted a Broadband Infrastructure Application ("Grant Application") to NTIA for $13,796,640 in grant funding under BTOP. (A true copy of the Grant Application Part 1, which was incorporated into the award by reference, is attached as **Exhibit A**.)

13. The central theme of the Grant Application was that Ronan Telephone would provide high-speed, broadband internet to areas that did not have it, including the Blackfeet and Flathead Reservations and surrounding communities.

14. Ronan Telephone proposed building a CCI project called Montana West, which it described in its Grant Application as "a cooperative effort by Ronan Telephone Co., the Health Information Exchange of Montana, Hot Springs Telephone Co.[,] the Blackfeet Reservation and the Flathead Reservation to build [a] 257 mile fiber backbone between Conrad and Missoula." (Ex. A, at 4.)

15. In its Grant Application, Ronan Telephone stated that the purpose of the Montana West project was "to provide new or improved high-speed Internet access to a significant population of residents, anchor institutions, and businesses throughout Northwestern Montana." (*Id.* at 8.) Ronan Telephone also stated that the "fiber backbone created by this project [would] be available to not only the [Blackfeet and Salish/Kootenai Tribes], but other service providers as well, and [would] cause more Internet usage because it [would] be more affordable and in some cases appear where there is no fiber yet." (*Id.*)

16.     Ronan Telephone further stated that the Montana West project would serve many of NTIA's CCI priorities, including the deployment of "Middle Mile broadband infrastructure to economically distressed areas" as well as the deployment of "Middle Mile broadband infrastructure that either includes a Last Mile infrastructure component in unserved or underserved areas or has received commitments from one or more Last Mile broadband service providers to utilize the Middle Mile components." (*Id.*)  Ronan Telephone identified several unserved areas that would benefit from the project, including St. Mary, Babb, Santa Rita, and Heart Butte on the Blackfeet reservation and Elmo, Big Arm, and Evaro on the Flathead reservation.  (*Id.* at 9.)   Ronan Telephone summarized its pitch for federal funds with the proclamation, "[w]e intend to open up the Internet to all of the residents, businesses, and anchor institutions in our funding area at a cost that will allow a highly increased adoption rate." (*Id.* at 18).

17.     For the Middle Mile portion of the Montana West project, Ronan Telephone stated that it would "build a very robust 10Gig IP backbone [from new or existing fiber] throughout Western Montana with very strong connection points." (*Id.* at 19.)  Ronan Telephone stated that

it designed this infrastructure with the intent of making "it easy for other providers to gain access to the low-cost bandwidth that [would] be made available with a direct Tier 1 connection to the Internet in Seattle." (*Id.*) Indeed, Ronan Telephone stated that it "fully expect[ed] to sell bandwidth to other providers in the region." (*Id.*) Ronan Telephone further represented that "[t]his project is an opportunity to . . . provide this valuable service to the residents and businesses in those outlying locations." (*Id.* at 7).

18. And for the Last Mile portion of the Montana West project, Ronan Telephone stated that it would install "700Mhz wireless, using the license that [it] acquired in the 2002 FCC spectrum auction," with base stations generally "located in the center of town or on an existing tower in order to gain some height." (*Id.* at 25.) Ronan Telephone was asked directly in its Grant Application, "[i]s the applicant seeking a waiver for providing less than 100% coverage of a service area?" (*Id.* at 13.) Ronan Telephone responded, "No." (*Id.*)

19. In addition to bringing new or improved high-speed, broadband internet access to unserved or underserved areas throughout Northwestern Montana, Ronan Telephone stated that the Montana West

project would create jobs and promote economic growth. According to Ronan Telephone, the project would "create direct employment for 2 teams of fiber installers, one from both the Blackfeet and Flathead reservation[s], for a total of 14 direct jobs." (*Id.* at 10.) "[Fourteen] people for 3 years equals 52 actual direct job years for the project" on the Blackfeet and Flathead reservations, Ronan claimed. (*Id.* at 18). Moreover, Ronan Telephone stated, "[t]his training and experience [would] create a new skill set on the reservations that [would] enable both on and off reservation employment." (*Id.*)

20. In September 2010, NTIA awarded Ronan Telephone the grant funds it requested for the Montana West project in its Grant Application. The Award (No. NT10BIX5570148) incorporated by reference the Grant Application and its amendments. (Copies of the Award and its special conditions are attached collectively as **Exhibit B**.) NTIA originally gave Ronan Telephone three years to complete the project. On Ronan Telephone's request, however, NTIA extended the completion deadline by a year.

21. During the life of the Montana West project, Ronan Telephone submitted quarterly progress reports to NTIA, certifying the status of the

project at that time.  In its report for the fourth quarter of 2014, Ronan Telephone certified that the overall project was 100% complete and that 100% of the original budgeted funds had been spent.

22. Each time Ronan Telephone submitted a quarterly progress report to NTIA, it expressly or implicitly certified that it was in compliance with the conditions of the Award, including but not limited to the goods and services it provided toward the completion of the Montana West project.

23. Contrary to its repeated express or implicit certifications of compliance with the conditions of the Award, Ronan Telephone was not, in fact, in compliance with those conditions.  Specifically, it did not provide new or improved high-speed, broadband internet to residents, anchor institutions, and businesses throughout Northwestern Montana; give third-party providers access to its fiber backbone; or create employment for 14 fiber installers from the Blackfeet and Flathead reservations.

24. For example, Ronan Telephone has provided access to only one commercial client and one residence in Babb.  Its disregard for this area—an area it promised the United States it would help in exchange


for taxpayer dollars—is epitomized in the fact that Ronan Telephone has misspelled "Babb" as "Baab" on its website for years.

25. In St. Mary, Ronan Telephone has only one commercial client, though this client is hooked up through point-to-point fiber rather than through a wireless radio as promised in the Grant Application.

26. In the St. Mary and Babb areas, while Ronan Telephone proposed to connect 180 homes and 15 businesses, it has connected only 2 of them.

27. Ronan Telephone connected the home of former Glacier County Commissioner Tony Sitzmann—who recommended the project to the federal government—in the East Glacier area, but no other residences in that community. For this single hook-up, in which fiber was run for only 100 feet, Ronan Telephone reported to the United States that the labor included nine days to bury the fiber, and an additional five days dedicated to "splicing."

28. In the Heart Butte area, although Ronan Telephone had proposed to connect 155 homes, 23 businesses, and 4 anchor institutions, it has connected none of them.

29. Despite the fact that the Grant Application projects a cost of $270 per customer to connect customers, plus a monthly fee, customers requesting service from Ronan Telephone have been given quotes of thousands of dollars just for the equipment for service, with no promise actually to hook up those customers, or have been told that service would be provided "within the next ten years," but that Ronan Telephone could not provide further detail. Ronan Telephone was allocated $92,070 from the grant for customer premises equipment, but Ronan Telephone apparently required customers to pay for the equipment it had already purchased using their tax dollars via the grant award. Since Ronan Telephone has connected almost zero customers in the areas described above, those funds appear to be unaccounted for.

30. When Relator emailed Ronan Telephone's CTO Jeremiah C. Mergenthaler directly to discuss when he would be provided wireless Internet access, Mergenthaler told him that "it is not on our schedule yet to deliver fiber up that route [but] we are still looking at the potential." This after Ronan Telephone certified in year end and quarterly updates that service in that area had already been provided. And in other communications with Relator, Ronan Telephone told Relator (again,

despite statements to the Government to the contrary) that "[w]hile we are always looking for new customers we do have to look at what our return on investment will be going into an area."

31. In the environmental assessment required by the National Environmental Policy Act (a true copy of which is attached as **Exhibit C**), Ronan Telephone included a "No Action Alternative" in which no fiber optic cable would be placed in the project areas and, accordingly, "[a]ffordable and reliable broadband service options would continue to be limited or unavailable on significant portions of the Blackfeet and Flathead Indian Reservations." (Ex. C, at 10.) Of course, Ronan Telephone did not take the No Action Alternative and instead received over $13.7 million in federal funds for the purpose of providing high-speed, broadband internet. Yet, the Blackfeet and Flathead Reservations have been left without internet, in direct contradiction to Ronan Telephone's statements to the United States.

32. By failing to comply with these and other conditions of the award, Ronan Telephone thwarted the very purpose of the grant—to expand high-speed, broadband internet access to unserved and underserved areas in Northwestern Montana. Ronan Telephone has also

refused to reasonably negotiate with local providers to allow residents from the underserved areas to have alternate means to access the fiber backbone. Local providers have indicated to Relator that Ronan Telephone's quotes "far exceed[ed] market price." Ronan Telephone has thereby directly thwarted exactly what it promised to achieve, despite representing to the Government in its final Annual Report (a true copy of which is attached as **Exhibit D**) that it "has not denied any request for interconnection." (Ex. D, at 2). Ronan Telephone's express or implicit certifications of compliance with the conditions of the Award were false or fraudulent.

33. Ronan Telephone knowingly made false or fraudulent certifications of compliance with the conditions of the Award. Ronan Telephone did so because it wanted money to purchase equipment and because it wanted to raise its profile for further financial gain. It purchased that equipment and deployed it in some of the work that it performed for this project and now deploys it on other projects. Ronan Telephone also covered the costs of its labor in whole or in part using grant funds for over three years. But Ronan Telephone had no intention of actually completing the project, because it believed that it would be too

expensive to install and service high-speed, broadband internet on the east side of Glacier National Park.

34. By knowingly and intentionally making false or fraudulent express or implicit certifications of compliance with the conditions of the Award, Ronan presented or caused to be presented a false or fraudulent claim for payment or approval to the United States.

## Count I – False or Fraudulent Claims in Grant Application and Quarterly Progress Reports (31 U.S.C. § 3729(a)(1)(A))

35. Relator incorporates by reference paragraphs 1–34 as if set forth fully in Count I.

36. By virtue of the acts described above, Ronan Telephone knowingly and intentionally presented or caused to be presented false or fraudulent claims to the United States for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

37. As a result Ronan Telephone's false or fraudulent claims, the United States sustained damages in an amount of no less than that of the grant awarded to Ronan Telephone under BTOP.

## Count II – False Records or Statements in Grant Application and Quarterly Progress Reports (31 U.S.C. § 3729(a)(1)(B))

38. Relator incorporates by reference paragraphs 1–34 as if set forth fully in Count II.

39. By virtue of the acts described above, Ronan Telephone knowingly made, used, or caused to be made false records or statements material to false or fraudulent claims for payment or approval by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

40. As a result of Ronan Telephone's false records or statements, the United States sustained damages in an amount of no less than that of the grant awarded to Ronan Telephone under BTOP.

## Prayer for Relief

Based on the allegations set forth above and the attached exhibits, Relator, on behalf of the United States, prays for judgment against Ronan Telephone as follows:

A. That Ronan Telephone be required to pay the United States triple the amount of its damages as determined at trial, plus civil penalties up to $11,000 for each false claim, statement, or record;

B.    That if the United States proceeds with this action, then Relator be awarded an amount no less than 15% but no more than 25% of the proceeds of the action or settlement of the claims;

C.    That if the United States does not proceed with this action, then Relator be awarded an amount no less than 25% but no more than 30% of the proceeds of the action or settlement of the claims;

D.    That Relator be awarded all reasonable attorney's fees and costs, in accordance with 31 U.S.C. § 3730(d)(1) or (d)(2);

E.    That the Court award such other and further relief as it may deem just and proper.

## Jury Demand

Relator demands a trial by jury on all issues so triable.

Dated: August 20, 2019

Respectfully submitted,

*/s/ Michael P. Gardner*
J. Benjamin Rottenborn
Michael P. Gardner
Justin E. Simmons
WOODS ROGERS PLC
P.O. Box 14125
Roanoke, VA 24038-4125

*/s/ Michael P. Manning*
Michael P. Manning
RITCHIE MANNING KAUTZ PLLP
175 N. 27th Street, Suite 1206
Billings, MT 59101

*Counsel for Relator Charles Sanford Stone, II*